The next case this morning is 522-0002, People v. Strawbridge. Arguing for the defendant appellant is Christina O'Connor. Arguing for the state is Louis Hizel. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Good morning. Ms. O'Connor, you're for the defendant? Yes. You may proceed when ready. Thank you, Your Honor. May it please the court, counsel, my name is Christina O'Connor. I am an assistant appellate defender at the Office of the State Appellate Defender, and I represent Mr. Jason Strawbridge in this matter. This case involves several issues regarding the constitutionality of Mr. Strawbridge's guilty plea, as well as the trial court's consideration of improper information when denying the motion to withdraw that guilty plea. For the reasons argued today and in the briefs, this court should allow Mr. Strawbridge to withdraw from his plea, or alternatively, reverse and remand for a new hearing on his motion in front of a different judge. First, I want to note that the trial court did fail to substantially comply with Rule 402 admonishments during the plea, and that this is a reason for the court to allow Mr. Strawbridge to withdraw from his plea. But for purposes of today's argument, I'm going to focus my time on the other issues raised in this appeal. However, I'm happy to answer any questions the court may have on this issue. In this case, counsel's failure to thoroughly investigate the evidence and properly explain what the evidence shows, in addition to the erroneous advice to Mr. Strawbridge that he would be accountable for the murder for his actions after Kendall was shot, resulted in Mr. Strawbridge's plea being unknowing and unintelligently made. First, it is important to discuss what the evidence shows in this case, and then move on to what counsel did and did not do. Counsel, if her client told her, I don't want a trial, I want a plea, get me a good deal. Are you asking us to rule that she still had the obligation to investigate and come up with a defense? Well, Your Honor, initially, Mr. Strawbridge did not want to fight his case. However, a few months after he confessed, counsel approached him, stated she believed he was innocent, and that Mr. Strawbridge then agreed to tell the truth, and that's when he recanted his confession. So at that point, it defies logic to argue that he no longer wanted to fight his case because he was taking steps to take back his confession. And then, however, right after he recanted, counsel stated that this was when the law of accountability came up because he would still be accountable for the murder based on his actions after the fact. And that was erroneous advice because under Illinois law, a person cannot be held accountable for a crime based solely on actions that occurred after the crime had been committed. There was no evidence in this case that there was a plan between Mr. Strawbridge and Phillippe. Counsel actually testified that she did not believe Mr. Strawbridge had any idea what was going to go on that day, nor was there any evidence that he had planned the murder, and that can be found in the transcript on page 338. Additionally, during the pretrial hearing about whether or not Phillippe and Mr. Strawbridge would have separate trials, Phillippe's attorney also argued that there was no plan between them and the evidence at trial would show that, and that's in the transcript on page 80. So because of that erroneous advice, Mr. Strawbridge then felt that he had no other choice but to plead guilty, which is consistent with him also not knowing all the evidence in this case. So going back to the evidence in this case, there is a plethora of evidence that shows Mr. Strawbridge's girlfriend, Phillippe, and her mother, Kendall, had a treacherous relationship with each other. The night before the murder, Phillippe threatened to kill Kendall and numerous other people with a gun. The morning of the murder, Phillippe called her sister, shot her gun in her camper, and said that she was imagining shooting her mother. And then while later that morning, Kendall was so terrified of Phillippe that she went and actually got an order of protection against her. Mr. Strawbridge was not involved in anything that occurred that previous night or that morning, nor was he named in that order of protection. And actually, Kendall had said before that Mr. Strawbridge always stood up for her against Phillippe. On the other hand, Phillippe told her sister many times that she wanted Kendall dead. A few hours before Kendall was killed, the police were called to a domestic disturbance between Phillippe and Kendall, where Mr. Strawbridge had to actually physically remove Phillippe from hurting her mother. And this was not the first time that Phillippe had physically hurt Kendall or that the police were called because of Phillippe's abuse. Phillippe demanded that her mother be arrested. And when the police did not believe her story about what happened, and instead served Phillippe with the order of protection, as well as a notice that she would have to remove her camper which was her residence from the property within three days, she became furious. After asking Kendall multiple times if she was going to be okay, the police left and shortly thereafter, Kendall was shot in the head. There was also a single gunshot through the television, which based on the trajectory of the bullet was shot by Phillippe, which she later admitted to during her interrogation. When reviewing the interrogation videos in this case, this court will see how Mr. Strawbridge initially confessed. He looked to Phillippe for all of his answers in the beginning. Then he said that he would take the heat as he believed Phillippe would not be charged and would be let go, which is supported by him asking the police to give Phillippe both his car and his dog. And then when Mr. Strawbridge recanted his confession, he explained that he believed Phillippe had much more to lose and that he only had five to 10 years to live because he suffered from cirrhosis of the liver. In this case, counsel actually testified she believed Mr. Strawbridge was innocent. And so the lead investigator on this case, Brown, also believed that Phillippe was the one who shot Kendall. Despite this, counsel admitted that she did not interview any of the witnesses who made statements, including those helpful to Mr. Strawbridge, did not visit the crime scene, asked for some of the evidence to be tested that would have supported Mr. Strawbridge's story, or even go and view any of the evidence collected at the scene. Counsel also had never handled a murder case before or a case with ballistics or gunshot residue evidence. Counsel did not ask for co-counsel or for an expert to help her understand the evidence or prepare for a defense for Mr. Strawbridge. And Mr. Strawbridge testified that he did not know the evidence against him when he pled guilty. In fact, he testified he did not even see Phillippe's interrogation videos where she eventually admitted that she had her hands on the gun. So even though counsel, when counsel gave Mr. Strawbridge erroneous advice and he said that he maybe didn't want to fight his case anymore, that was still based on counsel's erroneous advice here. And so that is ineffective assistance. And that alone is enough of a reason to allow Mr. Strawbridge to withdraw from his plea. But in addition to it, Mr. Strawbridge didn't even know the evidence that was presented that was in his case because counsel did not go over it with him. Mr. O'Connor, how do you address the prejudice prong of your client's predicament that he still is gonna have to deal with the fact that he gave a confession? He still has to deal with the fact that some of the shell casings were found in his pocket. There's gunshot residue found on him and some of the victim's brain matters on his face. So he's still gonna have a substantial burden to overcome to show the result would have been different. Yes, sir. There is some evidence that shows Mr. Strawbridge at least was in the room. In terms of the gunshot residue evidence, I know that Phillipe did not have it on her hands, but that could be explained by Mr. Strawbridge saying that she went and washed her hands away. Also the sweatshirt that Phillipe was wearing, which was also noted in the police report for the disturbance that happened right before the shooting had clumps of Kendall's hair on it. And according to Clutter, who was the expert that post plea counsel hired, goes through all of that evidence to show why Phillipe was most likely the one who actually shot and killed Kendall. And again, there was no plan here. So there is a lot of evidence to suggest that Phillipe was the one who actually shot and killed Kendall. And while Mr. Strawbridge again did initially confess, he recanted his confession. And the reason that he gave for why he initially confessed does make sense. I mean, Mr. Strawbridge, it was his girlfriend. He believed she had more to lose. I think she had five kids, even though she didn't have custody of them. And he believed that he was going to die soon. So he said he may as well take the heat for this. So I believe that while there is some evidence, there's also a lot of evidence that also supports Mr. Strawbridge's theory here and his defense. Additionally, this court has, sorry, this state has conceded that the trial court improperly bolstered counsel's credibility based on matters outside of the record when it denied Mr. Strawbridge's motion to withdraw plea. Therefore, the essential question for this court is whether that error was harmless. In light of the strong evidence that shows Mr. Strawbridge has a defense worthy of consideration, the erroneous legal advice counsel gave, counsel's admitted failures to investigate, Mr. Strawbridge's testimony that he did not know the evidence in this case, the court's failure to substantially comply with rule 402, and where the court found that this came down to an issue of credibility, Mr. Strawbridge was also denied a fair hearing on his motion when the court improperly bolstered counsel's credibility based on matters outside of the record. And again, we urge this court to carefully review all of the evidence in this case, the exhibits submitted by post plea counsel, the testimony from the motion to withdraw guilty plea hearing, and William Clutter's affidavit where he attested to his conversation with Brown and his review of what the evidence in this case actually shows, which all supports that Philippe was the one who shot and killed her mother, Kendall. For the reasons argued today and in the briefs, justice requires that this court allow Mr. Strawbridge to withdraw from his plea, or alternatively reverse intermand for a new hearing on the motion to withdraw plea in front of a different judge. Does the court have any other questions? Now, counsel, when you waive your right to trial, judge or jury, how are you not implicitly also waiving your right to confront witnesses against you? That's what a trial is, isn't it? Well, yes, your honor. And I'm glad you brought that point up because the trial court actually did not inform Mr. Strawbridge of that specific right when admonishing him. And that was part of the argument that the court failed to comply with rule 402. So Mr. Strawbridge actually did not know that he was waiving that right because the court never informed it. And Mr. Strawbridge actually testified at the motion hearing that he would not have pled guilty if he knew that he could have confronted the witnesses against him. But that's my question. Isn't it implicit when you waive your right to trial, you're waiving your right to confront witnesses because that's what a trial is. Witnesses saying he did it. Yes, your honor. And that's why Illinois Supreme Court rule 402 specifically says that and includes that in there because it is not just automatically assumed. If it was, I don't believe our Supreme Court would have said that the court has to specifically say that. But did the trial court in this instance, there clearly was a valid waiver of jury or bench trial. Do you agree with that? The court did ask Mr. Strawbridge if he knew what a bench and jury trial was, did not go into details. And then Mr. Strawbridge said yes and that he talked about it with his attorney. So not to belabor a point, but I guess what I'm saying is, wasn't that enough to establish substantial compliance because the defendant implicitly waived his right to confront any witnesses when he waived his right to trial? I don't believe so, your honor, just because the trial court did not specifically say that and Mr. Strawbridge later testified he did not know that he was actually waiving that right. So if the court had actually told him that you'd be waiving your right to confront witnesses and Mr. Strawbridge said he understood and agreed, then I believe that you would be correct, your honor. All right, thank you. Thank you. Justice Vaughn, any questions? No other questions, thank you. All right, thank you, Ms. O'Connor. You'll have a few minutes after Mr. Hizzo's argument. Mr. Hizzo for the state. Thank you, your honor. Good morning, your honors. Counsel may please the court. My name is Louis Hizzo and I represent the state on this matter. This honorable court should affirm the defendant's convictions for the murder of Sandra Kendall and affirm the lower court's decision in dismissing the motion to withdraw his guilty plea for three reasons. First, the trial court substantially complied with Illinois Supreme Court rule 402 and the defendant was not prejudiced by the trial courts, any lack of trial courts compliance thereof. Second, the defendant's claim of ineffective assistance of counsel fails because the defendant's claim cannot satisfy the requirements under Strickland. And third, the trial court's comments when referring to defense counsel's performance on matters previous before the court during the allegations of ineffective assistance of counsel were harmless and the defendant cannot fail or excuse me, cannot show that the comments were prejudicial. So how could there be substantial compliance with 402 if the trial court did not specifically advise the defendant that he was waiving his right to confront and cross-examine any witnesses? Your honor, the state would rest on the decision in Anderson that court instructs that for the purposes of rule 402, the rule does not require the trial court to parrot a number of specifically prescribed formal phrases that are mentioned under the rule. Otherwise that would render these constitutional guarantees counterproductive and put in jeopardy those very values that they were meant to preserve. The rule only requires a substantial compliance with the admonishments. There's no strict compliance that is mentioned within the rule that would otherwise make this an issue before the court. The court does not need to read specifically everything within that rule in order to comply with it. The very rule, the very first sentence within the rule says, the trial court has to substantially comply with the admonishments given. If upon review of the entire record, a reviewing court can determine that the plea of guilty made under the terms of the plea agreement was voluntary and was not made as a result of threats, forces, or promises, any result in strict compliance is harmless at that point. And in this specific instance, your honor, the defendant claims that the trial court failed to explain the nature of the charges against them. The very record explicitly rebuts that. On the record on page 147, it reads that the trial court states to the defendant, the offense that you're pleading guilty to, Mr. Strawbridge, is first degree murder. In this particular instance, the state is agreeing to a sentencing cap of 45 years. The record also shows that a factual basis was then read on the record, and the defendant was made aware of what exactly the facts and what exactly the allegations were at that time with regarding to the murder of Sandra Kendall. That can be found on the record on page 145 and 146. The defendant also argues that the state's argument right now is in contrast with this court's very own decision in People v. Brown, which was this district's decision back in 1991, where this court rejected the state's factual basis of the charge and the trial court's slight mention of the charge as sufficient. However, the issue under presently before this court and the issue with Brown are vastly different. There in Brown, the defendant was not only admonished, was only admonished that if he pled guilty, he would forfeit the right to trial. There was no mention to what specific charge he was pleading guilty to, nor was there a mention to within the opinion that the trial, excuse me, the reviewing court said that the trial court failed to instruct the defendant that he was subject to consecutive sentences. And so the reviewing court in that specific instance said that the trial court there did not sufficiently suffice with the requirements under 402 because it was just very difficult for the defendant to understand. And he was left with the impression that the maximum penalties that which he was subject to for those two convictions was only gonna be five years. And so in that specific instance, the defense counsel interjected during the admonishments and said, hey, by the way, your honor, the defendant understands that there's a consecutive sentencing requirement here that we can go ahead and accept that we understand that. So the reviewing court in Brown said, hey, that's not enough. The defense counsel's interjection there does not, you know, preclude the trial court's requirement under 402 to admonish the defendant. Here in our specific case, we have an instance where the trial court is telling the defendant, this is what you're pleading guilty to, which was in contrast, People v. Brown. And we have the state attorney then reviewing the facts, the allegations that the defendant is gonna plead guilty to. There is nothing in Brown that directly refutes the factual basis coupled with the trial court's explicitly informing the defendant of the charge that he's pleading guilty to is not enough. Also, the defendant asserts that the trial court failed to explain the minimum and maximums prescribed by law and instead chose to explain the terms of the agreement. We will not, there's nothing in the record that rebutts that, that is correct. However, here the trial court indicated that the sentencing ranges would be from 20 to 45 years. And by doing so, the trial court admonished the defendant according to the ranges that the defendant would be subjected to. At that time, the court had already assented to the agreement. So there was no reason for the trial court to tell the defendant, hey, you are subjected to a sentence between 20 to 40 or 20 to 60 years because there was a sentencing cap of 45. So when the trial court admonished the defendant 20 to 45, it was telling the defendant, this is what you're gonna be subjected to. The court in Sheriffpore, People v. Sheriffpore indicates that reversal is only required when the question of whether real justice has been denied or whether the defendant has been prejudiced by the inadequate admonishments. Here, the defendant cannot show prejudice towards that. He was sentenced between 20 to 45 years, which is within the realm of first degree murder sentences. And if the defendant's arguing, well, I should have been told 60 years, then there's no prejudice because he was sentenced to 45, way under the 60 years. As it relates to the defendant's arguments of ineffective assistance of counsel, the defendant's claim of ineffective assistance of counsel essentially fall under the premise that Ms. Bryan was inadequately prepared and qualified to effectively manage the murder case and take it to trial. However, Ms. Bryan testified that she visited the defendant dozens of times after she was appointed to represent him. And from the onset of her representation, the defendant was adamant about pleading guilty. And that can be found on the record on page 312 to 313. This is further evident by Ms. Bryan's testimony where she indicates that the defendant's first question right out of the get-go is, can you help me get anything less than the death penalty? Obviously, the state of Illinois does not practice that. So Ms. Bryan told her that's not even in the books here. It's not something that we practice. She further testified that she never really discussed matters of trial strategy with the defendant because he made it clear from the very beginning that he did not want to go to trial. As it relates to the defendant's claim that she should not have told him about the theory of accountability and all of that, and the defendant cites to people B. Taylor, in that Illinois Supreme Court case, the court stated that one may be, or excuse me, one may aid and abet without actively participating over the act. And proof that the defendant was present during the perpetration of the offense, that he maintained close affiliation with his companions after the commission of the crime, and that he failed to report the crime to the authorities, as well as his flight from the scene, are all factors that the court can consider, or that the fact finder may consider in determining the defendant's legal theory of accountability. And we're not arguing that- Counsel, before you run out of time, can you address the court's comment about his knowledge of Ms. Bryan on prior cases, whether that was improper in this case? Yes, Your Honor. The comments were improper. We will, that's not something that the state is going to argue against. However, we believe that people B. Ripito is dispositive on the issue. People B. Ripito stated that although a judge errs in considering facts outside of the record, if that record is deemed harmless by the reviewing court, by safely concluding and looking at the considerations with respects to the facts of the case, then there is essentially a harmless error. We would stand on the decision of people B. Ripito, and we'd ask this court to follow that analysis. And Your Honor, if you have any other questions, at this time, I will yield to that. Otherwise, thank you for your time. Counsel, let's assume for purposes of argument that the defendant tried to stop Philippe. They struggled. He tried to stop her from shooting Kendall, and that's when the gun went off, and that's why there was residue on his hands. That's not accountability, is it? That is not accountability, Your Honor. But as it relates to what duty defense counsel has to talk to his client, the state would argue that there was nothing wrong with clients informing, or excuse me, with defense counsel informing her client, hey, this could be something that you could be charged with. I'm not telling you that this could be likely a conviction, but I have a duty to inform you that the facts of this case could lead a fact finder to address those and see if you could be liable under the accountability theory. Defense counsel at no point should not have the ability to have that conversation with their client. That is something that if defense counsel doesn't do, then we're having the other argument is, well, now let's say that the state charges the defendant with accountability, and now the defendant is upset because they never had that conversation, they never had that understanding that whether or not it's likely that a conviction could occur, whether or not the state could actually charge the defendant with that, and then we would have a totally different conversation. So I believe that the defense counsel here was in the right informing the client, hey, this is a possibility. I'm not telling you that this is something that could result, but I'm just letting you know the theory of accountability could come into play here based off of your actions during the commission of this crime. All right, thank you. Thank you, Judge. Justice Vaughn? No other questions, thank you. All right, Ms. O'Connor, rebuttal? Yes, Your Honor, thank you.  at the motion to withdraw hearing, it wasn't just discussing the theory of accountability with Mr. Strawbridge. Counsel said that Mr. Strawbridge would be held liable under accountability theory for his actions after the fact. That is in the transcript. So this wasn't just counsel talking to him about it. Counsel stated that he would have been held accountable for everything he did afterwards. That is not correct, and that is wrong under Illinois law. Additionally, for the rule 402 admonishments, the rule says that the court shall not accept a plea of guilty without first addressing the defendant personally in open court and informing him of the nature of the following. And there's the nature of the charge, the minimum maximum sentence prescribed by law. The defendant has the right to plead not guilty or persist in that plea, and that about the trial rights, including the right to be confronted against witnesses against him. Counsel, how was your client prejudiced if the trial court didn't give him more than 45? What difference does it make if he could have gotten 60 when he got the exact benefit of his bargain? Well, your honor, in terms of the maximum minimum sentence prescribed by law, yes, it's not that he was prejudiced under that because he was sentenced within the plea. The more focus of what we're arguing is that the court did not tell Mr. Strawbridge he had the right to persist in his plea if not guilty, and that he did not have the ability to confront witnesses against him. So that is where Mr. Strawbridge actually said that he, if the court would have told him that, he would have not pled guilty. So when we argued the other things, which is the nature of the charge and the sentence, that goes to the fact that the trial court failed to substantially comply here. But the main focus is rule 402A, three and four, which is what Boykin versus Alabama, United States Supreme Court said is really crucial in a knowing, intelligent, and voluntary plea. Now, the state argues that we can't say that Mr. Strawbridge's plea was not voluntary, but we never argued about voluntariness. We argued intelligently made and knowingly. And there's a lot of evidence in this case between the 402 admonishments and the evidence that counsel failed to discuss with Mr. Strawbridge that this was not intelligent and knowingly entered into plea, which is enough to have this court withdraw Mr. Strawbridge's plea. Now, in terms of People versus Brown, I believe this court did hold that the trial court just stating the offense was not enough and that the state's comments or defense counsel's comments was not enough. So again, rule 402 is about the trial court's duty. The state cannot say things and counsel cannot say things. And then that would overcome the trial court's duty to comply with rule 402. Here, there was not substantial compliance with rule 402. The question is whether or not that was harmless. And Mr. Strawbridge, unlike in all of the state's cases that they argued, which was Sharfport, Ellis, and I believe Anderson. In those cases, they said that there was nothing in the record that contradicted the claims. In Sharfport, actually the defendant only argued that the court failed to ask him whether or not he was given any promises. And he actually testified that he was not promised anything. I mean, Ellis, there was no argument that the defendant was actually promised anything. He just argued that because the court failed to tell him or ask him whether or not he was promised or threatened that his plea should be vacated. Whereas here, Mr. Strawbridge actually testified that had he known that he could have confronted witnesses or persisted in his plea, he would have not pled guilty. So that is the difference between all of the cases that the state argues. Additionally, I just wanna point out that the state did not argue against the law of accountability in its brief, even though Mr. Strawbridge argued it in his opening brief. So I don't believe it was proper for the state to actually make those arguments now, but I'll leave that up to the court to decide whether or not they wanna consider that. Does the court have any other questions? Justice McKinney?  Justice Bowen? No other questions, thank you. Ms. O'Connor, we have no further questions. Do you have any closing comment? Yes, Your Honor, thank you. Just for the, again, for the reasons argued today and in the briefs, this court should allow Mr. Strawbridge to withdraw from his plea or alternatively reverse and remand for a new hearing on the motion to withdraw a plea in front of a different judge. Thank you. All right, thank you both for your arguments today. This matter will be taken under advisement. We'll issue an order in due course and the court is now in recess.